UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

RYAN D. PORTER,

        Petitioner,

    -v-                        05-CV-6142T
                                       **ORDER**

JAMES CONWAY, Superintendent of
Attica Correctional Facility

        Respondent.

───────────────────────────────

## I.    Introduction

*Pro se* petitioner Ryan D. Porter ("Petitioner") has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered January 25, 2002 in New York State, County Court, Monroe County, convicting him, after a jury trial, of Robbery in the First Degree (New York Penal Law § 160.15 [4]), Tampering with a witness in the Third Degree (Penal Law § 215.11 [1]), and Intimidating a victim or witness in the Third Degree (Penal Law § 215.15 [1]).

For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

On November 18, 2000, Petitioner stole approximately $300 from Michael's Dry Cleaners ("Michael's") in the Town of Greece, County of Monroe, by holding the employee, Regina Margiotta ("Margiotta"), at gunpoint. Trial Transcript [T.] 177-83. Minutes after robbing the store, Petitioner returned to the store, held the gun up to Margiotta's head and said, "you know, you didn't see anything, you

are going to be quiet. You are not going to say you saw anything. You don't remember anything." T. 184-85.

On September 21, 2001 a <u>Wade</u> hearing[1] was held in Monroe County Court where it was determined that Margiotta had identified Petitioner as the man who had robbed her at Michael's. Wade Hearing [W.H.] 8. The hearing demonstrated that on January 17, 2001, Sergeant Robert Trowbridge ("Trowbridge") of the Town of Greece Police Department visited Margiotta at her home to conduct a photo identification procedure as part of his investigation of the robbery of Michael's. W.H. 8-9. Trowbridge showed Margiotta six photographs and told her that "a person that she saw the evening of the incident may or may not be in the photo array," and Margiotta selected Petitioner's photo. W.H. 8. Following the <u>Wade</u> hearing, the court denied Petitioner's motion to exclude the identification testimony. W.H. 24.

On September 22, 2001, Margiotta received a telephone call at her home from a woman who identified herself as "Keesha." T. 195-99. After speaking with "Keesha" for approximately five to eight minutes, another person got on the phone and Margiotta recognized the voice as that of Petitioner. T. 195-99. Petitioner apologized for robbing Margiotta, explaining that "he was on heroin and . . . high at the time." T. 200. Petitioner then said, "you know, there is a trial coming up. I don't want you to testify," and offered

---

[1]     <u>United States v. Wade</u>, 388 U.S. 218 (1967) (due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

Margiotta money. T. 200. Petitioner told Margiotta that he knew she had picked him out of a lineup and asked if he could have her promise that she wouldn't testify. T. 200. Margiotta responded, "[w]hat if I do?", to which Petitioner replied "that he didn't want to see anything bad happen to [Margiotta]." T. 200. Margiotta became hysterical and hung up the phone. T. 200-01. Five minutes later the phone rang again, Margiotta heard a voice say "Keesha," and then the phone was disconnected. T. 202-03. The phone rang again, Margiotta answered it, spoke with "Keesha" for about two minutes, and then hung up. T. 203-04. Margiotta notified the police of the phone calls, and then filed a report of the incident with the District Attorney's Office. T. 205.

Following a jury trial, Petitioner was convicted and received a fifteen year determinate sentence with five years post-release supervision on the Robbery count, and a two to four year sentence on both the Tampering and Intimidating counts, to run concurrently with each other, but consecutive to the Robbery count.

Petitioner appealed his conviction to the Appellate Division, Fourth Department, and his conviction was unanimously affirmed. People v. Porter, 2 A.D.3d 1429 (4th Dep't 2002), lv. denied 2 N.Y.3d 744 (N.Y. 2004).

On March 31, 2005, Petitioner filed a habeas corpus petition in which he raised two grounds for relief: (1) the jury may have convicted him of an unindicted act; and (2) the pre-trial photo array was unduly suggestive. Petition ["P."] ¶22A, B, Addendum

("Add."), Point I, II (Dkt. #1). On June 28, 2005, Petitioner filed a motion to stay and hold the petition in abeyance in order to completely exhaust his state judicial remedies regarding "additional issues" not included in the original petition. Petitioner's ["Pet'r"] Motion to Stay (Dkt. #8). The Court denied Petitioner's motion for a stay as premature, and directed him to submit an amended complaint including all claims, both exhausted and unexhausted, by August 12, 2005. Decision and Order, June 29, 2005 (Dkt. #9). The Court also ordered that, upon submission of the amended complaint, Petitioner could renew his request for a stay-and-abeyance. Id.

On August 25, 2005, Petitioner filed a proposed amended petition, which the Court treated as a motion to amend the petition, wherein he raised his two original claims and one additional claim - prosecutorial misconduct and unbalanced interested witness charge. See Amended Petition ["Am. Pet."], (Dkt. #10). Petitioner did not renew his request for a stay in the proposed amended petition. On October 28, 2005, Petitioner filed what was docketed as a "Response to Respondent's Memorandum" in which he renewed his request for a stay until an "additional claim" had been exhausted in the state courts. See Pet'r Response (Dkt. #15). On March 6, 2006, the Court granted Petitioner's motion to amend his petition and treated the document filed as Docket #10 as Petitioner's amended petition. See Decision and Order, March 6, 2006 (Dkt. #17). The Court did not expressly address Petitioner's

4

renewed request for a stay-and-abeyance raised in Petitioner's "Response to Respondent's Memorandum" (Dkt. #15).[2]

On May 22, 2007 Petitioner filed an application for a writ of error *coram nobis* in the Appellate Division, alleging ineffective assistance of appellate counsel, which was denied on July 6, 2007. People v. Porter, 42 A.D.3d 975 (4th Dep't 2007), lv. denied 9 N.Y.3d 963 (N.Y. 2007). On December 19, 2007, having exhausted this claim in state court, Petitioner filed a "Memorandum of Law in Support of Addendum to Petition for Writ of Habeas Corpus" in which he raised for the first time an ineffective assistance claim as his fourth claim for habeas relief. See Pet'r Memo (Dkt. #19).

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if

---

[2]    The Court notes that the request for a stay-and-abeyance was not filed as a separate motion or application for a stay-and-abeyance.

the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

6

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091, 124 S.Ct. 962 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Exhaustion Requirement and Procedural Bar**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that. . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054, (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

The Second Circuit has held that there are several ways a petitioner may apprise the state court of a constitutional claim without "citing chapter and verse of the Constitution." <u>Daye</u>, 696 F.2d at 194. A petitioner may alert the state court to a claim's constitutional nature by "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." <u>Id.</u>

"For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997)(quotations omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991). Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts. E.g., <u>Grey</u>, 933 F.2d at 120-21; <u>Reyes</u>, 118 F.3d at 139.

For a procedurally defaulted claim to be heard on federal habeas review, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (<u>i.e.</u>, the petitioner is

actually innocent).” <u>Aparicio</u>, 269 F.3d 78, 90 (2d Cir. 2001) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 748-50 (1991).

## IV.  Petitioner's Claims

### A.  Jury May Have Convicted Petitioner of an Unindicted Act

Petitioner alleges that his Fifth Amendment right to have a grand jury, rather than the prosecutor, indict him was violated because the proof established more than one act, thus making it possible that the jury convicted him of an unindicted act or that different jury members convicted him based on different acts. P. ¶22B, Add., Point II. Specifically, Petitioner contends that while the indictment contained only one count each of Tampering with a witness and Intimidating a victim or witness, the proof presented at trial showed that he, either personally or at his direction, called Margiotta several times on September 22, 2001, and thus committed multiple criminal acts. <u>See</u> Pet'r Appellate Br. 10-12.[3] Petitioner raised this claim on direct appeal and the Appellate Division rejected it on the merits. <u>Porter</u>, 2 A.D.3d 1429 (4th Dep't 2002), <u>lv. denied</u> 2 N.Y.3d 744 (N.Y. 2004).

Respondent argues that Petitioner failed to exhaust this argument in the state courts because Petitioner never mentioned federal constitutional violations when he raised this claim on direct appeal. Respondent's (“Resp't”) Mem. 11, (Dkt. #6); <u>see</u>

---

[3]    The Court refers to Petitioner's Appellate Brief on direct appeal in order to liberally construe Petitioner's *pro se* pleadings and “interpret them ‘to raise the strongest arguments that they suggest.’ ” <u>See</u> <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).

Pet'r Appellate Br. 10-12. Petitioner's claim on direct appeal is framed only as a violation of New York statutory law and is supported only by state law. See Pet'r Appellate Br. 10-12. Although Petitioner cited to People v. George, 255 A.D.2d 881 (4th Dep't 1998), a state case that includes the term "double jeopardy," the mere mentioning of a constitutional term does not necessarily apprise the state court to the federal nature of the claim or otherwise "call to mind a specific right protected by the Constitution." Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir. 1984). Similarly, the Second Circuit has observed that "one reference [to 'constitutional rights'] is insufficient to alert the state courts to a confrontation clause issue." Grady v. Le Fevre, 846 F.2d 862, 864 (2d Cir. 1988).

Thus, Petitioner's Fifth Amendment claim was not fairly presented to the state court on direct appeal and Petitioner cannot now collaterally attack his conviction in state court on those grounds. See Grey, 933 F.2d at 120 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)(barring collateral review if a claim could have been raised on direct appeal but defendant unjustifiably failed to do so)). Petitioner's claim is therefore deemed exhausted and procedurally barred since he no longer has remedies available in the state courts. Further, Petitioner has not attempted to show "cause" and "prejudice" resulting from the procedural default, or that failure to consider the claim would result in a "miscarriage

of justice." Aparicio, 269 F.3d at 90 (citation omitted). Accordingly, habeas review of this claim is foreclosed.

Assuming, *arguendo*, that Petitioner exhausted his state court remedies with respect to this claim, it is nonetheless without merit. The law is well settled that there is no federal constitutional right to indictment by a Grand Jury in a state criminal prosecution. See Alexander v. Louisiana, 405 U.S. 625, 633 (1972); see also LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (noting that the Fifth Amendment's right to a Grand Jury indictment had not been incorporated against the states through the Fourteenth Amendment). Nevertheless, courts in this Circuit have held that a variance between accusatory allegations, such as an indictment, and proof at trial is cognizable on federal habeas review since it implicates double jeopardy and due process considerations. See United States ex rel. Richards v. Bartlett, 1993 WL 372267 (E.D.N.Y. Sept. 9, 1993); see also Archie v. Strack, 378 F.Supp.2d 195, 199-200 (W.D.N.Y. 2005); Chandler v. Moscicki, 253 F.Supp.2d 478, 486-88 (W.D.N.Y. 2003). A variance in an indictment occurs when "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." United States v. Thomas, 274 F.3d 655, 670 (2d Cir. 2001). To prevail on a variance claim, a defendant must demonstrate substantial prejudice. Id.

Here, there is no variance between the indictment and the proof offered at trial. The indictment contained one count each of Tampering with a witness and Intimidating a victim or witness, and the proof at trial established that a single threatening phone conversation took place between Petitioner and the witness, Margiotta. Moreover, Petitioner cannot demonstrate any prejudice since he was fully informed of the charges against him and was in no way misled by the evidence offered at trial. Accordingly, the Appellate Division's rejection of this claim was neither "contrary to" nor an "unreasonable application" of clearly established Federal law.

## B. Pre-Trial Photo Array was Unduly Suggestive

Petitioner alleges that the pre-trial photo identification procedure used to identify him was unduly suggestive because of differences in the physical characteristics and clothing between himself and the other men in the photo array. Am. Pet. ¶22A, (as stated in original petition). Petitioner raised this claim on direct appeal and the Appellate Division rejected it on the merits. Porter, 2 A.D.3d 1429 (4th Dep't 2002), lv. denied 2 N.Y.3d 744 (N.Y. 2004).

"A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification.'" United States v. Concepcion, 983 F.2d 369 (2d Cir. 1992)(quoting Simmons v. United States, 390 U.S. 377

(1968). The principal question in determining whether a photo array is unduly suggestive is "whether the picture of the accused . . . so stood out from all of the other photographs as to suggest to an identifying witness that the person was more likely to be the culprit." Concepcion, 983 F.2d at 369. A photo array is unduly suggestive if the perpetrator matches the previous descriptions given by the witness, and the photos of the other participants obviously do not. See Abdur Raheem v. Kelly, 257 F.3d 122, 134 (2d Cir. 2001).

Here, all six subjects in the photo array were approximately the same age, had the same skin color, and were wearing eyeglasses. W.H. 22. The trial court found "there [was] no single photograph that would stand out and draw one's attention to one photograph over another." W.H. 24. Further, despite Petitioner's argument on appeal that his photo was much brighter, that his glasses were smaller, and that his shirt was different than the other subjects in the photo array, the Appellate Division found that none of these factors rendered the photo array unduly suggestive. Porter, 2 A.D.3d 1429.

Under § 2254 (e)(1), a state court's determination of a factual issue shall be presumed to be correct and the habeas petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. See Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008). Petitioner has failed to present clear and convincing evidence that the state court's

factual determination was erroneous. Moreover, there is no evidence before the Court that would lead it to question the Appellate Division's conclusion that there was "no substantial likelihood that Petitioner would be singled out for identification." See Porter, 2 A.D.3d 1429. Accordingly, this Court cannot find that the state court's determination of this issue was "contrary to" or an "unreasonable application" of clearly established Federal law. This claim, therefore, must be denied.

## C. Prosecutorial Misconduct; Unbalanced Interested Witness Charge

Petitioner alleges that the prosecutor introduced testimony of a discovery report that had not been properly introduced into evidence, thereby denying the jury the opportunity to weigh and assess the value of the evidence during their deliberations. Am. Pet. ¶22C, Add., Point III. Additionally, Petitioner claims that the trial court failed to deliver a balanced and adequate interested witness charge to the jury. Am. Pet. ¶22C, Add., Point III.

As noted, claims raised in a federal habeas petition may only be considered where the petitioner has first exhausted all state judicial remedies. Grey, 933 F.2d at 119. Since Petitioner did not fully and fairly present these claims in the state courts, they are unexhausted, and, accordingly, not properly before this Court. However, under AEDPA, an "application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available to the courts of the

State." 28 U.S.C. § 2254(b)(2); accord Rhines v. Weber, 544 U.S. 269, 277 (2005). That is, where a petitioner fails to exhaust all state remedies, the district court may still reach the merits of the petition if all the petition's claims, both exhausted and unexhausted, will be denied.

AEDPA does not provide any guidance on the standard to be applied when a district court exercises its discretion to deny a petition on the merits, but the majority of district court decisions in the Second Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. Naranjo v. Filion, No. 02 Civ. 5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003)(collecting cases)(footnote omitted). A minority of courts in this Circuit have expressed the test as whether "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." Id. (quoting Hernandez v. Lord, No. 00 Civ. 2306 (AJP), 2000 WL 1010975, at *4-5 & n.8 (S.D.N.Y. July 21, 2000)) (Report and Recommendation)(internal quotations omitted).

Petitioner contends that when he took the stand to testify at his trial, the prosecutor deliberately misrepresented material evidence by presenting him with a discovery report that was not in evidence, and which the jury could not see upon request. Am. Pet. ¶22C, Add., Point III. However, the transcript indicates that the prosecutor merely marked this exhibit for identification and used

15

it to either impeach Petitioner's testimony or refresh his recollection at trial, neither of which constitute inappropriate or unfair behavior. T. 386-87. This claim is therefore without merit.

Petitioner's contention that the court failed to deliver a balanced and adequate interested witness charge to the jury is also without merit. The propriety of a state trial court's jury instructions is generally a matter of state law not cognizable on federal habeas review. Cupp v. Naughten, 414 U.S. 141, 146 (1973). To be entitled to federal habeas relief, a petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,'" but also that it violated a federal constitutional right. Id. The question is "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." Id. at 147.

Here, Petitioner fails to establish that he was denied a fundamentally fair trial by the trial court's interested witness charge to the jury. On the contrary, the transcript reveals that the charge substantially conformed to 1 CJI [N.Y.] 7.03, and was properly balanced. T. 477-79. Accordingly, Petitioner's claims are "patently frivolous," and, as such, are denied on the merits pursuant to § 2254(b)(2).

D.    **Ineffective Assistance of Appellate Counsel**

Petitioner alleges that he was denied effective assistance of appellate counsel because appellate counsel failed to raise the issue of ineffective assistance of trial counsel on direct appeal.

Pet'r Memo (Dkt. #19). At the outset, the question of whether or not the Court granted Petitioner's request for a stay as set forth in his "Response to Respondent's Memorandum" (Pet'r Response Dkt. #15), is moot (see n.2 _infra_), inasmuch as Petitioner has now exhausted his claim concerning ineffective assistance of appellate counsel. Petitioner raised this claim in his application for a writ of error _coram nobis_, which was summarily denied by the Appellate Division, Fourth Department. A summary denial of Petitioner's motion constitutes an "adjudication on the merits" of this claim. <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 314 (2d Cir. 2001).

The Court notes initially that this claim was first raised in this matter in Petitioner's "Memorandum of Law in Support of Addendum to Petition for Writ of Habeas Corpus," and that Petitioner failed to seek and obtain permission to file what is, in effect, a second amended petition. <u>See</u> Pet'r Memo, (Dkt. #19). Petitioner did not include any claim or argument regarding ineffective assistance of appellate counsel in either his original petition or his amended petition. A petitioner may not file an amended habeas petition as a matter of right after a responsive pleading has been served. <u>See</u> Fed. R. Civ. P. 15(a)(1)-(2) ("A party may amend its pleading once as a matter of course: before being served with a responsive pleading; or . . . [I]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."). However, liberally

17

construing Petitioner's "Memorandum of Law," as the Court must, <u>see</u>
<u>Triestman v. Fed. Bur. of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006)
(citation omitted), the Court will construe it as a motion to amend
his amended petition (Dkt. #10) to raise an ineffective assistance
of appellate counsel claim, and determine whether Petitioner may so
amend the amended petition.

Since over three years had passed between the time
Petitioner's conviction became final in 2004, <u>see</u> 28 U.S.C.
§ 2244(d)(1)(A), and the filing of his "Memorandum of Law" in 2007,
the one-year statute of limitations under 28 U.S.C. § 2244(d)(1)
has expired.[4] When a petitioner seeks to add a new claim to his
habeas petition once the one-year statute of limitations has
expired, he must show that the amendment "relates back" to the
claims pleaded in the petition. <u>See</u> Fed. R. Civ. P. 15(c); <u>Fama v.</u>
<u>Commissioner of Corr. Servs.</u>, 235 F.3d 804, 816 (2d Cir. 2000).
Unless the "new" claim "relates back" to the claim or claims raised
in the petition, it is untimely under the one-year statute of
limitations set forth in § 2244(d)(1).

An amendment relates back if the claim that is sought to be
added "arose out of the conduct, transaction, or occurrence set
forth" in the petition. Fed. R. Civ. P. 15(c)(1)(B). In making this
determination, the court must find that the petition "gave the

---

[4]      Time is not tolled by the filing of a state collateral proceeding
*after* the one-year AEDPA limitations period has already expired. <u>See</u> <u>Smith v.</u>
<u>McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000)(filing state collateral proceeding
does not "reset" the one-year period). Thus, Petitioner's filing of his writ
of error *coram nobis* application on May 22, 2007, had no effect on the statute
of limitations period.

defendant fair notice of the newly alleged claims." <u>Fama</u>, 235 F.3d at 816 (citing <u>Wilson v. Fairchild Republic Co.</u>, 143 F.3d 733, 738 (2d Cir. 1998). In <u>Mayle v. Felix</u>, the Supreme Court rejected the proposition that a petitioner's "trial, conviction, or sentence" constitute the "conduct, transaction, or occurrence" contemplated by Fed. R. Civ. P. 15. 545 U.S. 644, 656 (2005). To hold otherwise would mean that all proposed amended petitions would "relate back" for purposes of Fed. R. Civ. P. 15(c): "[V]irtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." <u>Id.</u> at 657 (citation omitted).

Instead, the Supreme Court held, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." <u>Id.</u> A proposed amendment, however, will not relate back to the date of the petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleadings set forth." <u>Id.</u> at 650.

Here, the ineffective assistance of appellate counsel claim that Petitioner seeks to add to his petition is not tied to a "common core of operative facts," but rather is, at most, an attenuated claim based on the alleged ineffective assistance of trial counsel. Petitioner claims that trial counsel was ineffective

for failing to request a missing witness charge, failing to object to prosecutorial misconduct, and failing to advance a legally sufficient defense. <u>See</u> Pet'r Memo, Exhibit #1, Affidavit in Support of Writ of Coram Nobis, (Dkt. #19).[5] Although Petitioner raises a prosecutorial misconduct claim in his petition, he makes no factual allegation that appellate counsel was ineffective in failing to raise the ineffective assistance of trial counsel for failing to object to the alleged misconduct. Thus, the proposed amendment that Petitioner seeks to now interpose does not relate back to either the original or amended petition and is, therefore, untimely. <u>See</u> <u>Williams v. Ercole</u>, No. 09 Civ. 0363 (SJF), 2009 WL 1974433, at *4 (E.D.N.Y. July 7, 2009)(where ineffective assistance of appellate counsel claim was not tied to a "common core of operative facts," it did not relate back to the petition and was time-barred). Accordingly, any amendment of the petition to assert such a claim would be futile and must be denied. <u>See</u> <u>Jones v. New York State Div. Of Military and Naval Affairs</u>, 166 F.3d 45, 55 (2d Cir. 1998) (district courts may properly deny leave when amendment would be futile).

Insofar as the Court chooses to address the merits of this claim, the Court finds that Petitioner cannot overcome the

---

[5]      The Court refers to Petitioner's writ of error *coram nobis* application in order to liberally construe Petitioner's *pro se* pleadings and "interpret them 'to raise the strongest arguments that they suggest.'" <u>See</u> <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).

presumption that appellate counsel's failure to raise the ineffective assistance of trial counsel issue was reasonable. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Further, Petitioner fails to demonstrate a reasonable probability that the results of the appeal would have been different had appellate counsel raised the claim. <u>Id.</u> Accordingly, the Appellate Division's rejection of this claim was neither "contrary to" nor an "unreasonable application" of clearly established Federal law.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with

United States Court of Appeals for the Second Circuit in accordance
with the requirements of Rule 24 of the Federal Rules of Appellate
Procedure.

       **SO ORDERED.**

                    S/Michael A. Telesca

                    _____
                    HONORABLE MICHAEL A. TELESCA
                    United States District Judge

DATED:     November 24, 2009
             Rochester, New York